## PEOPLE v CLARK

1. CRIMINAL LAW—CONCURRENT SENTENCES—STATUTES.

All sentences run concurrently in the absence of a statute providing otherwise.

2. CRIMINAL LAW—NOLLE PROSEQUI—REINSTATEMENT OF CHARGES.

Charges that have been nol-prossed may be reinstated unless barred by the statute of limitations.

3. CRIMINAL LAW—SPEEDY TRIAL—MOTIONS.

A motion for a speedy trial or to have a charge dismissed is not necessary when the stated reason for adjournment of a trial date serves to chill the exercise of a defendant's constitutional right to appeal a previous conviction.

4. CRIMINAL LAW—PLEA BARGAINING—NOLLE PROSEQUI—ENFORCEABILITY.

The prosecution should not be held to its agreement to nol-pros certain charges against a defendant in return for the defendant's plea of guilty to another charge when a supervening court decision relieves the defendant of criminal responsibility on the charge to which he pleaded guilty.

5. CRIMINAL LAW—NOLLE PROSEQUI—REINSTATEMENT OF CHARGES—SPEEDY TRIAL.

A defendant was not denied his right to a speedy trial where the prosecution reinstated, within the statutory time limit, charges which were once nol-prossed where it was not shown by the defendant that the prosecution had nol-prossed the charges in an effort to chill the defendant's right to appeal a previous conviction.

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 547.
[2] 21 Am Jur 2d, Criminal Law § 164.
[3, 5] 21 Am Jur 2d, Criminal Law § 245.
[4] 21 Am Jur 2d, Criminal Law § 518.
[6, 7] 60 Am Jur 2d, Penal and Correctional Institutions § 58 *et seq.*
[8] 21 Am Jur 2d, Criminal Law § 540.

6. Criminal Law—Statutes—Sentence Credit for Time Served—Construction of Statutes.

> The statutory provisions allowing credit to a defendant for time served while awaiting trial, sentence, or serving a void conviction should be liberally construed to achieve their salutary purpose (MCLA 769.11a, 769.116).

7. Criminal Law—Statutes—Sentence Credit for Time Served—Construction of Statutes.

> A defendant is entitled to credit for time served under a void conviction when the second conviction, on which he is to receive the credit, does not arise from the same facts as the void conviction, but where the plea-bargaining negotiations leading to the void conviction were also relevant "arising" facts in that they included negotiation as to the charges resulting in the second conviction and sentence (MCLA 769.11a).

8. Criminal Law—Sentence—Indeterminate Sentence.

> Any sentence which provides for a minimum exceeding two-thirds of the maximum is improper as failing to comply with the indeterminate sentence act (MCLA 769.8).

Appeal from Ontonagon, Donald L. Munro, J. Submitted Division 3 June 9, 1972, at Grand Rapids. (Docket No. 12806.) Decided October 25, 1972.

Theodore F. Clark was convicted, on his plea of guilty, of larceny in a building. Defendant appeals. Remanded for resentencing with instructions.

*Arthur J. Tarnow,* State Appellate Defender, and *Richard S. McMillin,* Assistant Defender, for defendant.

Before: R. B. Burns, P. J., and Levin and Targonski,* JJ.

Levin, J. On June 13, 1970, the defendant was arrested. He was charged with (1) breaking and entering, (2) forging check blanks stolen in the breaking and entering, (3) uttering and publishing

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

check blanks so stolen, and (4) possession—at the time he was arrested—of a stolen motor vehicle.

On August 19, 1970, he pled guilty to the stolen-motor-vehicle charge and was sentenced to serve a term of 7-1/2 to 10 years.

On September 18, 1970, a nolle prosequi was entered dismissing the other three charges.

Four days later, on September 22, 1970, the Michigan Supreme Court ruled that the possession-of-a-stolen-motor-vehicle statute[1] was restricted to situations where possession of the stolen automobile is coupled "with intent to fraudulently transfer title" and that the portion of the statute prohibiting possession of a motor vehicle having reason to know it has been stolen "must either be treated as surplusage or deemed inconsistent with the intent of the statute and deleted from it".[2]

On November 4, 1970, Clark filed a claim of appeal from his stolen-motor-vehicle conviction. On January 15, 1971, this Court, on the basis of a stipulation signed by the prosecuting attorney, entered an order directing that the conviction be set aside and the sentence vacated.

During the interim, on December 4, 1970, the prosecutor reinstituted two of the three previously dismissed charges—breaking and entering, and forgery. Subsequently, on June 14, 1971, the prosecutor filed an amended information charging the offenses of breaking and entering and larceny in a building. On that day, Clark pled guilty to larceny in a building.[3] He was sentenced to serve a term of 3 years 237 days to 4 years in prison, and was given credit against that sentence for 171 days,

---

[1] MCLA 257.254; MSA 9.1954.

[2] *People v Morton,* 384 Mich 38, 40, 41 (1970).

[3] MCLA 750.360; MSA 28.592.

being the time he had spent in the Ontonagon County Jail from December 23, 1970, the day he was returned from state prison, until June 17, 1971, the date of sentencing on the larceny charge.

He now appeals, claiming that

(1) the delay in prosecuting the forgery, breaking and entering, and larceny charges denied him his constitutional right to a speedy trial;

(2) he is entitled to sentence credit for 193 days, being the time served in county jail and in state prison from June 13, 1970, the date of his arrest, until December 23, 1970, when he was returned from state prison to the Ontonagon County Jail; and

(3) the trial judge abused his discretion in sentencing him to serve a term of 3 years 237 days to 4 years because that is not an indeterminate sentence.

## The Speedy Trial Issue

In Michigan all sentences run concurrently in the absence of a statute otherwise providing.[4] Accordingly, after a defendant has pled guilty to one of several multiple charges pending against him, prosecutors generally dismiss the other charges after the defendant has been sentenced.

In nol-prossing the other charges pending against Clark, the Ontonagon County Prosecutor proceeded on a basic underlying assumption, namely, that Clark had been validly convicted and would be required to serve the sentence which had been imposed—a sentence of 7-1/2 to 10 years.

The prosecutor's assumption proved to be erroneous. Four days after the other charges were nol-

---

[4] *In re Carey,* 372 Mich 378, 380 (1964); *People v Chattaway,* 18 Mich App 538, 541 (1969).

prossed the Michigan Supreme Court—in a decision which the prosecutor could not have been expected to foresee—held that a statute which had been on the books for years, under which a large number of persons had been convicted and had served sentences, did not apply in the kind of case where it had most generally been applied.

It is well established that charges that have been nol-prossed may be reinstated unless barred by the statute of limitations.[5]

There is a special statute of limitations for multiple charges pending against persons who are tried on less than all the charges, are convicted and become inmates of a "penal institution of this state". That statute,[6] as judicially interpreted, provides in general that the untried charges shall be brought to trial within 180 days after the defendant is remanded to the custody of the Department of Corrections.[7]

Clark cannot avail himself of this special statute of limitations because less than 180 days elapsed. The prosecutor reinstituted nol-prossed charges within less than four months after Clark was sentenced; no claim is made that the prosecutor failed to prosecute those charges with adequate diligence after they were reinstituted.

Clark relies, rather, on the Michigan Supreme Court's decision in *People v Harrison,* 386 Mich 269, 274–276 (1971). Harrison had been charged

---

[5] *People v Kuhn,* 67 Mich 463 (1887); *cf. People v Williams,* 9 Mich App 676 (1968); 1 Wharton's Criminal Law & Procedure, § 140, pp 314–315; 21 Am Jur 2d, Criminal Law, § 180, p 238.

[6] MCLA 780.131, *et seq.;* MSA 28.969(1), *et seq.*

[7] See *People v Harrison,* 386 Mich 269, 277 (1971).

Compare *People v Williams, supra,* p 684, where we said:

"The unstated assumption of the statute relied on by the defendant is that a prosecutor may properly try less than all the multiple offenses facing an accused and after such trial proceed against the accused on some or all the remaining charges."

with two separate offenses of breaking and entering. After he was convicted of one of the two charges the other charge was adjourned for the reason that "def. sentenced in another case—adj. till appeal time expires". After Harrison filed an appeal a new trial date was set on the other charge. The Supreme Court ruled that what was done was "constitutionally obnoxious. Such action serves to chill the exercise of a defendant's constitutional right to appeal a criminal conviction and will not be tolerated." The Court went on to say that Harrison had been deprived of a speedy trial and, although he had not demanded a speedy trial,[8] a motion for a speedy trial or to have the charge dismissed "is not necessary when the *stated* reason for the adjournment of the trial date serves to chill the exercise of a defendant's constitutional right to appeal a conviction". (Emphasis supplied.)[9]

We read *Harrison* as expressing the Court's sense of indignation that a prosecutor would so attempt to impede a convicted person's exercise of his Michigan constitutional right to appeal.[10] The Court's invocation of the right to a speedy trial appears to have been the incidental peg on which this rule of supervisory control, designed to protect the appeal process, was hung.

Under long-established doctrine, a formal record-entered demand for a speedy trial must be made to invoke that constitutional right.[11] If the Supreme Court meant, in *Harrison,* to dispense

---

[8] See *People v Collins,* 36 Mich App 400, 414 (1971), concerning the demand requirement.

[9] Harrison was not intimidated; he did appeal.

Compare *People v Earegood,* 383 Mich 82, 85 (1970), with *People v Earegood,* 12 Mich App 256, 278 (1968).

[10] *Cf. O'Hara v People,* 41 Mich 623–624 (1879); *People v Mulier,* 12 Mich App 28, 33 (1968); *North Carolina v Pearce,* 395 US 711, 724; 89 S Ct 2072, 2080; 23 L Ed 2d 656, 668–669 (1969).

[11] See fn 8.

with the demand requirement for *all* cases where a defendant has been convicted of one of several pending charges, it would not have used the carefully circumscribed language previously quoted from the *Harrison* opinion.

Clark argues that, although not *explicitly* stated, the prosecutor's purpose in this case, as in *Harrison,* was to chill exercise of the right to appeal. On this record we do not perceive the unstated practice that the defendant attributes to the Ontonagon County Prosecutor.

Clark was sentenced on the stolen-motor-vehicle conviction on August 28, 1970. Eleven days later, September 8, 1970—well within the time for filing a post-conviction motion to withdraw guilty plea or for filing a claim of appeal—the prosecutor filed petitions with the trial court for leave to enter nolle prosequis on the ground that Clark had been convicted of the stolen-motor-vehicle charge and that the conviction is "now final" and the ends of justice no longer require prosecution of the pending charges. Those petitions were granted on September 9, 1970, and nolle prosequis were filed on September 16, 1970, long before Clark filed his timely claim of appeal.[12]

We recognize that a prosecutor could accomplish the same purpose sought to have been accomplished by the *Harrison* prosecutor by doing what the Ontonagon County Prosecutor did in this case, *i.e.,* dismiss other charges promptly, and reinstate the charges if and when an appeal is filed. Such a practice would, no doubt, become known and, by indirection, the prosecutor could accomplish what the *Harrison* prosecutor was prevented from accomplishing.

---

[12] An indigent defendant has 60 days within which to request counsel; counsel has 60 days thereafter to file a claim of appeal. See GCR 1963, 803.1.

The Supreme Court has chosen, at least in words, to limit its *Harrison* rule to cases where the "stated reason" for the adjournment of the trial is to chill exercise of a defendant's constitutional right to appeal a criminal conviction. And, even if the rule is not so limited—if it applies as well to cases where it can be demonstrated that, although not "stated", pending charges were held over the head of a convicted person in an effort to dissuade him from appealing—it has not been shown on this record that what was done here was done in an effort to chill Clark's, or any other defendant's, exercise of his right to appeal.

This is obviously a case of plea bargaining. Recently there has been considerable discussion concerning the nature of plea-bargaining contracts:[13] what is the remedy for nonperformance of a plea-bargaining contract—is it specifically enforceable or is the remedy "rescission" *(i.e.,* granting a motion to withdraw a guilty plea)?[14]

Clark was relieved of his part of the bargain as a result of a decision of the Michigan Supreme Court. Even if Clark had not timely appealed, it would, of course, have been intolerable to keep him imprisoned for a crime he did not, in the light of the new interpretation of the statute, commit.[15]

---

[13] See *Santobello v New York,* 404 US 257; 92 S Ct 495; 30 L Ed 2d 427 (1971); Anno: *Enforceability of Plea Agreement, or Plea Entered Pursuant Thereto, With Prosecuting Attorney Involving Immunity From Prosecution for Other Crimes,* 43 ALR3d 281.

[14] *Cf. Santobello v New York, supra,* 404 US p 263; 92 S Ct p 499; 30 L Ed 2d p 433.

"The ultimate relief to which petitioner is entitled we leave to the discretion of the state court which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, *i.e.,* the opportunity to withdraw his plea of guilty."

[15] See *People v Nichols,* 33 Mich App 63, 69 (1971). Compare the

Whether Clark sought to get out of the bargain or was relieved of the bargain is beside the point. He was not required to serve the sentence imposed by the court. We see no reason to hold the prosecutor in such a case to his part of the bargain. Clearly, this is a case of mutual mistake concerning a basic underlying assumption; on principle, although this is a mistake of law and not of fact, the people are entitled to be relieved of the consequences of that mistake.

In *United States v Wells*, 430 F2d 225 (CA 9, 1970), the United States Court of Appeals for the Ninth Circuit declared that a defendant should be allowed to withdraw a bargained plea of guilty if he was unaware of a change in the law which made it unlikely that he could be convicted of the charge. The Court said that the plea was not "intelligently made", because, if not for the defendant's mistake of law, he might have been able to bargain for a plea of guilty to the lowest charge facing him, rather than the intermediate charge to which he had in fact pled guilty.

We do not mean to be understood as incorporating the intricacies of the law of mistake into plea-bargaining jurisprudence. The question is one of policy, and is not controlled by analogies of other cases decided in other factual contexts.

Subject to the need to put stale claims to rest— the 180-day rule, and the constitutional right to a speedy trial—there is no sound reason why an offender should go scot-free because of a supervening and unexpected decision relieving him of criminal responsibility on only one of several outstanding charges. The prosecutor should not be barred from prosecuting charges which he dropped in the

recent wholesale jail delivery following the Supreme Court's decision in *People v Sinclair*, 387 Mich 91 (1972). *Cf. People v Smith*, 260 Mich 486 (1932).

mistaken belief that no useful purpose would be served in pressing them.

We appreciate that plea-bargaining jurisprudence leaves much to be desired.[16] It is not, however, our responsibility, in deciding this case, to harmonize and rationalize all the cases to strike a perfect balance between prosecution and defense. We are persuaded that we should not relieve this miscreant of criminal responsibility to compensate for deficiencies in plea-bargaining jurisprudence as laid down in other cases.

### *Sentence Credit for Time Served Issue*

Two statutory provisions are applicable:

"Whenever any person has been heretofore or hereafter convicted of any crime within this state and has served any time upon a void sentence, the trial court, in imposing sentence upon conviction or acceptance of a plea of guilty based upon facts arising out of the earlier void conviction, shall in imposing the sentence specifically grant or allow the defendant credit against and by reduction of the statutory maximum by the time already served by such defendant on the sentence imposed for the prior erroneous conviction. Failure of the corrections commission to carry out the terms of said sentence shall be cause for the issuance of a writ of habeas corpus to have the prisoner brought before the court for the taking of such further action as the court may again determine." MCLA 769.11a; MSA 28.1083(1).

"Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served

---

[16] See *People v Byrd,* 12 Mich App 186 (1968); *People v Earegood,* 12 Mich App 256 (1968); *People v Hollman,* 12 Mich App 231 (1968). See, also, *People v Wickham,* 41 Mich App 358, fn 2 (1972).

in jail prior to sentencing." MCLA 769.11b; MSA 28.1083(2).

These statutory provisions are remedial and should be liberally construed to effectuate the salutary purpose sought to be achieved by the Legislature in their enactment.[17]

Throughout the entire period of time that Clark was in the Ontonagon County Jail he was there not only because he faced the stolen-motor-vehicle charge or, after he pled guilty, sentencing on that charge, but also because he faced the breaking-and-entering charge. He should not be penalized because he was ultimately convicted of a reduced charge—larceny in a building.

Having in mind the liberal construction which we give the sentence-credit statute, we have no difficulty in concluding that the term "offense", as used in that statute, includes a reduced charge growing out of the same transaction alleged in lodging the greater charge, and that, so construed, Clark was kept in the Ontonagon County Jail because he was denied or unable to furnish bond for an offense of which he was ultimately convicted.

We are also persuaded that Clark is entitled to credit for the time he served in state prison on the stolen-motor-vehicle conviction. While separate illegal transactions were involved, the plea-bargaining negotiations were also relevant "arising" facts.

We recognize that we stretch the language, "based upon facts arising out of the earlier void conviction" when we include the plea negotiations which gave rise to Clark's larceny conviction as

---

[17] See the opinions of the Court in *Moore v Parole Board,* 379 Mich 624 (1967); *People v Sims,* 38 Mich App 127 (1972); *People v Chattaway, supra; People v Cohen,* 35 Mich App 706 (1971). *Cf. Browning v Michigan Department of Corrections,* 385 Mich 179, 188 (1971).

part of the arisen facts in respect to the earlier void stolen-motor-vehicle conviction. They were, however, in reality, very much a part of those facts.

Clark's second conviction—the larceny conviction—*arose* out of the prosecutor's original decision to forego prosecution of a charge in respect to the breaking and entering in exchange for a plea of guilty to a stolen-motor-vehicle charge, and the subsequent setting aside of that conviction, and the prosecutor's decision to reprosecute Clark in respect to the breaking and entering rather than in respect to the stolen motor vehicle.

We unhesitatingly give the words "facts arising" an expansive meaning in order to avoid the injustice that would result from denying defendants, like Clark, credit for time served in prison under a void sentence.

### Indeterminate Sentence Issue

In *People v Tanner,* 387 Mich 683, 690 (1972), the Michigan Supreme Court held that "any sentence which provides for a minimum exceeding two-thirds of the maximum is improper as failing to comply with the indeterminate sentence act".

The Court limited its decision "to those cases in which sentence is to be or has been imposed after date of filing of this opinion and to those cases which on date of filing of this opinion are pending on appeal and which have properly raised and preserved the issue for appeal".

In this case Clark properly preserved this issue and, accordingly, he is entitled to the benefit of the rule enunciated in *Tanner.*

Clark's conviction is affirmed. His sentence is vacated, and the case is remanded to the trial

court for resentencing in accordance with the rule stated in *Tanner* and with the further direction that Clark is to be granted credit against the sentence imposed on remand for the 193 days served between June 13, 1970, and December 23, 1970.

All concurred.