Charles Lee SPANN, Appellant,

v.

STATE of Minnesota, Respondent.

No. A04–278.

Supreme Court of Minnesota.

Oct. 6, 2005.

Bradford Colbert, Legal Assistance to Minnesota Prisoners, William Mitchell College of Law, St. Paul, MN, for Appellant.

Mike Hatch, Attorney General, Susan Gaertner, Ramsey County Attorney, Jeanne L. Schleh, Assistant Ramsey County Attorney, St. Paul, MN, for Respondent.

## OPINION

PAGE, Justice.

On this issue of first impression, we must decide whether a defendant can waive his right to appeal after he has been convicted following a jury trial. Appellant Charles Spann was convicted of two counts of first-degree criminal sexual conduct involving separate victims after a jury trial. The district court sentenced Spann to two executed 118–month sentences to be served consecutively. Each sentence was an upward departure from the Minnesota Sentencing Guidelines presumptive sentence of 86 months. Spann appealed his conviction and sentences to the court of appeals, but he agreed to dismiss his appeal and waive all of his rights to appellate and postconviction review when the state agreed to request that Spann be resentenced to presumptive guidelines sentences. The court of appeals dismissed Spann's appeal and the district court resentenced Spann to executed consecutive 86–month sentences. Spann subsequently filed a postconviction petition challenging his sentences and the waiver of his right to appeal. In addition, he alleged that he had received ineffective assistance of trial and appellate counsel. The postconviction court denied the petition, finding that Spann had made a "knowing, voluntary and intelligent waiver of his right to appeal." The court of appeals affirmed. We reverse and remand.

Spann was charged with and, after a jury trial, found guilty and convicted of two counts of first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(g) (2004), for the sexual abuse of two of his minor daughters. The district court sentenced Spann to consecutive 118–month sentences for the two convictions. The sentences were an upward durational departure from the presumptive

sentence of 86 months[1] for each count under the sentencing guidelines and were based on the court's finding of several aggravating factors, which it placed on the record.

Spann appealed his conviction to the court of appeals arguing: (1) juror bias because of a comment made by one of the jurors during trial; (2) improper admission of taped interviews of both victims that introduced evidence of Spann's bad character and, without proper notice, other bad acts by Spann; (3) prosecutorial misconduct based on improper cross-examination and attacking Spann's character during closing arguments; and (4) improper sentencing under the sentencing guidelines. On the improper sentencing issue, Spann argued that the district court abused its discretion when it imposed a 32–month upward departure for each of the consecutive sentences because his crimes did not justify a 32–month upward departure.

Before the state filed its responsive brief at the court of appeals, the parties entered into a stipulated settlement of Spann's claims on appeal. Under the stipulation, the state agreed to request a remand for resentencing to have Spann's sentence reduced to two consecutive 86–month sentences from the original two consecutive 118–month sentences. In exchange, Spann agreed to dismiss his appeal and to waive his right to challenge his convictions or sentences on direct appeal or on postconviction relief. The parties' stipulation specifically stated, "Appellant further agrees that resentencing pursuant to stipulated [sic] agreement resolves all issues raised in appellant's brief, and appellant waives all further appellate and post-conviction review." The parties further agreed that if the district court did not accept the stipulation agreement, Spann's appeal would be reinstated.

Based on the parties' stipulation, the court of appeals dismissed the appeal and remanded for resentencing. At the resentencing hearing, the state explained that in exchange for the reduced sentence, the "defendant waives all issues on appeal and all appeals." Although Spann agreed that he was "waiving all rights to appeal the case," neither the attorneys nor the court asked Spann any specific questions about the extent of his waiver. The district court agreed to the terms of the stipulation and resentenced Spann to consecutive 86–month sentences for each count.

In May of 2003, Spann, acting pro se, filed a petition for postconviction relief in which he challenged his sentence and alleged ineffective assistance of both trial and appellate counsel. In September 2003, Spann, represented by counsel, filed an amended postconviction petition in which he challenged the waiver of his appeal rights and incorporated by reference his pro se petition. The postconviction court denied Spann's petition, stating "[t]he record clearly establishes that [Spann] made a knowing, voluntary and intelligent waiver of his right to appeal." The court further indicated that, under the circumstances of the case, the waiver was valid because Spann was represented by

---

1. The presumptive sentence remained at 86 months for each count because the sentences were made consecutive to each other. Minn. Sent. Guidelines IV; *see also State v. Hernandez,* 311 N.W.2d 478 (Minn.1981). Consecutive sentences are not an upward departure from the guidelines because consecutive sentences are permissive (may be given without departure) for "[m]ultiple current felony con- victions for crimes against persons." Minn. Sent. Guidelines II. F(2). We have interpreted this provision of the guidelines to mean that "[c]onsecutive sentences are permissive for multiple current felony convictions for crimes against separate individuals." *O'Meara v. State,* 679 N.W.2d 334, 341 (Minn. 2004).

counsel and obtained a "known benefit" in the reduced sentence. The court also determined that Spann's attempt to appeal his sentence was untimely and stated that Spann made no claim that his sentence was illegal.

On appeal, a divided panel of the court of appeals affirmed the postconviction court's denial of relief. *Spann v. State*, 686 N.W.2d 868, 872 (Minn.App.2004). In affirming, the majority noted that Spann did not dispute that his waiver was knowing, intelligent, and voluntary, but rather argued, without citing any controlling authority, that his waiver violated public policy. *Id.* The court held that:

> Under current Minnesota law, it was not an abuse of discretion for the district court to deny appellant's request for postconviction relief and give effect to appellant's waiver of his right to appeal, where the waiver was entered into (1) knowingly, intelligently, and voluntarily; (2) following appellant's conviction, sentence, and filing of an appellate brief; and (3) in exchange for the known benefit of a sentence pursuant to the Minnesota Sentencing Guidelines.

*Id.* The dissenting judge, however, argued that "a convicted defendant is entitled to at least one right of review by an appellate or postconviction court" and that permitting a waiver of a defendant's right to appeal and to a postconviction review raises "[i]ssues of fairness and voluntariness" of the waiver and "risk[s] foreclosing appellate review of issues that may not be fully developed at the time of waiver." *Id.* (Klaphake, J., dissenting). We granted Spann's petition for further review.

▮▮▮ Whether a criminal defendant can waive his right to appeal is a legal issue of first impression that this court reviews de novo. *Cf. State v. Larson*, 605 N.W.2d 706, 710 (Minn.2000). Spann also argues that his constitutional right to due

process has been violated. This court also reviews constitutional challenges de novo. *State v. Schwartz*, 628 N.W.2d 134, 138 (Minn.2001).

Spann argues that the criminal appeal is a "fundamental element of procedural fairness" and "[b]ecause a criminal appeal plays a critical role in the criminal justice system, public policy and Due Process preclude a defendant from waiving his right to appeal his conviction." While acknowledging that certain rights, such as the defendant's Sixth Amendment right to counsel, can be waived, he argues that waivers that conflict with public policy are invalid.

In that regard, he argues that appeals are necessary to correct lower court errors and that a waiver serves to affirm erroneous convictions and that denying appellate scrutiny makes appellate courts "accomplices to police violations and trial court errors." He also argues that permitting a defendant to waive the right to appeal will harm uniformity among district court decisions because appellate review is the only way to ensure that all the district courts "move in a common direction." Spann contends that, as a consequence of allowing defendants to waive the right to appeal, there would be a decrease in the perceived legitimacy of the criminal justice system in the eyes of both the public and the defendant. Spann further contends that allowing defendants to waive the right to appeal could circumvent policy considerations set by this court and the legislature. He suggests, as an example, that in requiring the defendant to waive all appeal rights, the state could ignore the requirement, established by this court in *State v. Misquadace*, 644 N.W.2d 65 (Minn.2002), that a sentencing departure cannot be based on a plea agreement alone, but must have a factual basis. Finally, Spann argues that permitting a defendant to waive

his right to appeal violates due process, which prohibits a state from placing an impermissible burden on a defendant's right to appeal his conviction. Citing *People v. Harrison*, 386 Mich. 269, 191 N.W.2d 371 (1971), he asserts that "requiring [him] to waive his right to appeal in exchange for a modification of his sentence chills his right to appeal and is 'constitutionally obnoxious.'" Spann states that the waiver is especially onerous in this case because he waived his right to appeal after a jury trial, rather than after a guilty plea pursuant to a plea agreement. He argues that after a trial, "the defendant's only bargaining tool is his right to appeal" and that the defendant's unequal bargaining position allows a prosecutor to force the defendant into giving up his rights in exchange for a small concession, which, Spann asserts, is exactly what happened in this case.

The state argues that a criminal defendant may knowingly, intelligently, and voluntarily waive his right to appeal, just as he may waive other rights. Alternatively, the state argues that even if all rights to appeal are not waivable, waiver in this case does not violate public policy. The state asserts that Spann was fully aware of his rights, had several months between signing the stipulation and resentencing to reconsider, and waived his rights only after he had a full opportunity to consult with his counsel. The state contends that the stipulation agreement was "the result of a good faith, non-coercive negotiation with benefit to both parties" and that Spann received a reduced sentence and the state was able to give closure to the child victims in the case.

The state, relying on *State v. Williams*, 664 N.W.2d 432 (Minn.App.2003), contends that the court of appeals has allowed a defendant to waive the right to appeal when (1) the defendant received an important concession from the state, and (2) the

waiver was knowing, intelligent, and voluntary. The state distinguished the instant case from *Ballweber v. State*, 457 N.W.2d 215 (Minn.App.1990), in which the court of appeals held that a defendant's right to appeal an illegal sentence cannot be waived. The state contends that *Ballweber* is a narrow exception to the general rule that a defendant may waive an appeal right. Because Spann does not complain that his sentence is illegal, the state contends that *Ballweber* is inapplicable.

The state acknowledges that the right to appeal is an integral part of the criminal justice system, but argues that the importance of the right to appeal has nothing to do with whether the right is waivable. The state notes that a defendant may waive many constitutional rights, including *Miranda* rights, the right to a jury trial, and the right to counsel as long as the waivers are knowing, intelligent, and voluntary. Moreover, the state asserts that the prevailing view among United States jurisdictions is that the right to appeal may be waived.

The state also contends that Spann's public policy arguments are overstated and asserts that the waiver of the right to appeal after conviction at trial is no more burdensome on a defendant than a waiver at the preconviction plea bargaining stage. The state argues that Spann had legitimate interests to negotiate and made an agreement that benefited him, the victims, and the state. The state further claims that allowing a defendant to waive his right to appeal would neither create the danger of a loss of uniformity nor undermine the judicial system because appeal waivers "are far from common practice."

■ The specific question of whether a defendant, who has been convicted after a jury trial, can waive all rights to appeal as part of an agreement with the state is an issue of first impression with this court.

Although a convicted defendant does not have a constitutional right to appeal under either the United States Constitution or the Minnesota Constitution, we have determined in Minnesota that "a convicted defendant is entitled to at least one right of review by an appellate or postconviction court."[2] *Hoagland v. State*, 518 N.W.2d 531, 534 (Minn.1994) (quoting *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976)); *see also* Minn. R.Crim. P. 28.02, subd. 2 ("A defendant may appeal as of right from any adverse final judgment * * *."); Minn.Stat. § 244.11, subd. 1 (2004) ("An appeal to the court of appeals may be taken by the defendant or the state from any sentence imposed or stayed by the district court according to the rules of criminal procedure for the district court of Minnesota.").

■ At the same time, we have allowed criminal defendants to waive many rights stating that "it has long been settled law that courts will honor a defendant's lawful, 'intentional relinquishment or abandonment of a known right or privilege.'" *State v. Givens*, 544 N.W.2d 774, 777 (Minn. 1996) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). The rights that we have allowed defendants to waive are rights personal to the defendant and include a waiver of *Miranda* rights, *see State v. Ray*, 659 N.W.2d 736, 742 (Minn.2003); the right to counsel, *State v. Blom*, 682 N.W.2d 578, 613 (Minn. 2004); the right to a jury trial, *State v. McKenzie*, 532 N.W.2d 210, 217–18 (1995), Minn. R.Crim. P. 26.01, subd. 1(2)(a); and the right to be present at trial, *Brown v. State*, 682 N.W.2d 162, 166 (Minn.2004), Minn. R.Crim. P. 26.03, subd. 1(2). In-

deed, a defendant may waive the right to trial entirely by pleading guilty. *State v. Nordstrom*, 331 N.W.2d 901, 904 n. 6 (Minn.1983). We have also allowed defendants to waive the protections of certain evidentiary rules. *Blom*, 682 N.W.2d at 617.

■ Moreover, a defendant can always waive the right to appeal simply by not filing an appeal. Further, the failure to object to an error at trial constitutes a waiver of the right to appeal on that basis unless the appellant shows that there was plain error affecting substantial rights. *See, e.g., State v. Bolstad*, 686 N.W.2d 531, 542 (Minn.2004) (denying a new trial for unobjected-to prosecutorial misconduct where misconduct did not deny defendant a fair trial); *State v. Taylor*, 650 N.W.2d 190, 205 (Minn.2002) (upholding admission of evidence where appellant failed to object at trial).

We recognize that a majority of other jurisdictions have held that allowing a defendant to waive his right to appeal is not inherently illegal or unfair. *See, e.g., State v. Perkins*, 108 Wash.2d 212, 737 P.2d 250, 251 (1987); *United States v. Nave*, 302 F.3d 719, 720 (7th Cir.2002) (concluding waiver of appeal is no different than waiver of other rights). Jurisdictions allowing a defendant to waive his or her right to appeal a conviction require that the waiver be made "intelligently, voluntarily and with an understanding of the consequences." *Perkins*, 737 P.2d at 251; *see also Cubbage v. State*, 304 Md. 237, 498 A.2d 632, 633 (1985) (upholding a knowing and voluntary waiver of appeal made by the defendant after conviction but before

---

**2.** The case before this court arises in the context of the right of the defendant to waive his right to appeal after a conviction based on a trial. We express no opinion on whether a defendant may waive his right to appeal as a result of a plea bargain before trial or convic-

tion. *See, e.g., United States v. Maldonado*, 410 F.3d 1231 (10th Cir.) (upholding a pretrial plea agreement in which the defendant waived his rights to "collaterally attack any matter in connection with this prosecution, conviction and sentence").

sentencing). These jurisdictions have justified the allowance of appeal waivers stating that, while the criminal defendant's right to appeal is important, it is no more fundamental than other rights a defendant is allowed to waive. *Perkins,* 737 P.2d at 252; *see also Nave,* 302 F.3d at 720; *Estelle v. Dorrough,* 420 U.S. 534, 536, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975) ("there is no federal constitutional right to state appellate review of state criminal convictions"); *McKane v. Durston,* 153 U.S. 684, 687, 14 S.Ct. 913, 38 L.Ed. 867 (1894) (stating that the right to appeal is not a necessary element of due process of law). There may also be some advantages to allowing a defendant to waive the right to appeal the waiver: (1) brings closure to the state, defendant, and victims; (2) increases judicial economy; (3) gives the defendant power with which to bargain; and (4) reduces frivolous appeals. *See, e.g., United States v. Andis,* 333 F.3d 886, 889 (8th Cir.2003) (citing *United States v. Rutan,* 956 F.2d 827, 829 (8th Cir.1992) (overruled on other grounds)). But we note that most of the jurisdictions upholding appeal waivers have decided the issue in the context of a pretrial plea agreement in which the defendant has pleaded guilty in exchange for a reduced sentence and not in the context of the waiver of the right to appeal after the defendant has been convicted and sentenced.

Other jurisdictions, while allowing a defendant to waive the right to appeal, have explicitly placed restrictions on the appeal waiver. *See, e.g., Andis,* 333 F.3d at 889. The Eighth Circuit Court of Appeals stated that it "will not enforce a waiver where to do so would result in a miscarriage of justice" and concluded that claims involving an illegal sentence, a sentence in violation of the terms of the agreement, and claims asserting ineffective assistance of counsel are not waivable. *See id.* at 890–91. Other courts have also included prose-cutorial misconduct among the claims that the defendant cannot waive. *See, e.g., United States v. Brown,* 232 F.3d 399 (4th Cir.2000); *Blancas v. United States,* 344 F.Supp.2d 507 (W.D.Tex.2004).

The Supreme Court of Arizona has determined, however, that inclusion of an appeal waiver in a plea or other agreement is inherently coercive and allowing the defendant to waive this right provides the defendant with little bargaining power. *State v. Ethington,* 121 Ariz. 572, 592 P.2d 768 (1979). Essentially, the court held that the right to appeal is so vital to the protection of the defendant's rights that it cannot be waived. *See id.* at 769. The court stated that the public policy of ensuring that defendants are afforded their basic rights "forbids a prosecutor from insulating himself from review by bargaining away a defendant's appeal rights." *Id.* The court further held that the right to appeal was not negotiable in plea bargaining and that a defendant, as a matter of public policy, would be allowed to bring a timely appeal from a conviction notwithstanding an agreement waiving an appeal. *Id.*

In *People v. Harrison,* the Michigan Supreme Court determined that it was "constitutionally obnoxious" to allow "the adjournment of one case with notice it would be dismissed if a defendant did not appeal a second case." 191 N.W.2d at 374. In Michigan, where the right to appeal is included in the state constitution, the court further stated, "Such action serves to chill the exercise of a defendant's constitutional right to appeal a criminal conviction and will not be tolerated." *Id.* The court also stated, "A court is 'without right to * * * put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered.'" *Id.* n. 2 (citing *North Carolina v. Pearce,* 395 U.S. 711, 724, 89

S.Ct. 2072, 23 L.Ed.2d 656 (1969) (overruled on other grounds)).

▮▮▮ Due process guarantees in our state and federal constitutions include the right to a fair trial. *State v. DeRosier*, 695 N.W.2d 97, 106 (Minn.2005). The requirement that a defendant receives a fair trial makes the waiver of the right to appeal after being convicted at trial as a result of an agreement with the state fundamentally different from the defendant's waiver of personal rights or waiver by default. Therefore, we conclude, based on public policy and due process considerations, that a defendant may not, after conviction at trial and sentencing, waive the right to appeal.

The right to appeal implicates not only matters personal to the defendant, but broader issues as well. Once the defendant is convicted, institutional concerns that the conviction was fair and proper become paramount. "There is no legitimate State interest in preserving an unjust conviction for the sake of the conviction alone." *State v. Ventura*, 139 A.D.2d 196, 531 N.Y.S.2d 526, 532 (App.Div.1988). Although the state argues that allowing a defendant to waive his right to appeal allows the defendant to obtain a concrete benefit, such as a reduced sentence, in exchange for waiving the right to appeal, the need to have trial proceedings reviewed for error outweighs a defendant's interest in accepting a particular benefit.

Moreover, requiring a defendant to waive his right to appeal after conviction in order to receive some benefit offered by the state is particularly coercive because the disparity in bargaining power between the defendant and the state increases significantly after the defendant has been convicted. Before trial, the defendant and the state face the same uncertainty as to what the outcome of the trial will be. A criminal defendant can therefore make a calculated decision as to what is in his best interest and may plead guilty if the plea is knowing, intelligent, and voluntary. *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000). After trial, a defendant has only his right of appeal with which to bargain. Requiring the defendant to give up the right to appeal in exchange for a reduced sentence forces the defendant to choose between a guaranteed reduced sentence and a fair trial. Allowing a defendant to waive his right to appeal after conviction and trial would foster a judicial system that discourages development of the law while encouraging the preservation of unfair trials.

▮▮▮ Further, prosecutors have a duty to "seek justice, not merely to convict." *State v. Blasus*, 445 N.W.2d 535, 539 (Minn.1989) (quoting ABA Standards Relating to the Prosecution Function, Standard 1.1(c)). Offering a benefit to a defendant in return for the defendant waiving appeal rights as part of negotiating an agreement with the state runs afoul of that duty because it puts the state in a position to hide its own misconduct and errors. As some commentators have suggested, the state would be most likely to offer such benefits in return for waiver of the defendant's right to appeal in cases in which the defendant has meritorious issues to raise on appeal. *See* Robert K. Calhoun, *Waiver of the Right to Appeal*, 23 Hastings Const. L.Q. 127, 167 (1995). We agree with the Supreme Court of Arizona that the public policy requiring prosecutors to ensure that defendants are afforded their basic rights does not allow a prosecutor to insulate his or her actions from review by making a bargain with the defendant requiring the defendant to waive all rights to appeal. *Ethington*, 592 P.2d at 769. *Ethington* involved a waiver of the right to appeal in the plea agreement context. The

concerns raised there are magnified in the context of a conviction after trial.

■ Public policy also requires that courts take an active role in ensuring the fairness of trials. Courts have a duty to be a "check against potential abuses of prosecutorial powers." *See Ventura,* 531 N.Y.S.2d at 530. Allowing the state to require a defendant to waive the right to appeal after conviction in order to obtain some benefit has the potential to frustrate that duty. Simply saying that the defendant is free to reject the state's offer does not eliminate the problem. Once conviction occurs, a waiver of the right to appeal seals trial errors. As noted earlier, due process requires that a criminal defendant receive a fair trial. Forcing the defendant to choose between a fair trial and a "known benefit" puts the defendant in an untenable situation and erodes the fairness of criminal trials. Further, as with our concern with prosecutors having an incentive to enter into plea agreements requiring a waiver of the right to appeal, so too are we concerned that courts may have an incentive to accept an appeal waiver agreement as it would also insulate the court from reversal for its errors. *See* Gregory M. Dyer & Brendan Judge, *Criminal Defendants' Waiver of the Right to Appeal— An Unacceptable Condition of a Negotiated Sentence of Plea Bargain,* 65 Notre Dame L.Rev. 649, 668–69 (1990). We therefore conclude that allowing a defendant to waive his right to appeal after trial conviction and sentencing is inconsistent with the court's role as an objective supervisor whose purpose includes maintaining the integrity of the judicial system. *See In re Linehan,* 557 N.W.2d 171, 191–92 (Minn.1996) (stating that the district court has an affirmative duty to protect the rights of defendants).

Our holding in *State v. Misquadace* supports our conclusion that broader interests impose limits on the rights that a defendant can waive. In *Misquadace,* we held that a defendant's plea agreement alone is not enough to support the district court's decision to depart from the guidelines. 644 N.W.2d at 72. Our decision was based on a 1997 amendment to Minn.Stat. § 244.09 (2004) that contained the following language: "Sentencing pursuant to the guidelines is not a right that accrues to a person convicted of a felony; it is a procedure based on state public policy to maintain uniformity, proportionality, rationality, and predictability in sentencing." *Misquadace,* 644 N.W.2d at 69 (*citing* Act of May 6, 1997, ch. 96, § 1, 1997 Minn. Laws 694, 695). We concluded that Minn.Stat. § 244.09 removed whatever "right" the defendant may have had to be sentenced under the guidelines, but that departure from the sentencing guidelines must be based on articulated substantial and compelling circumstances to ensure rational and consistent sentencing. *Misquadace,* 644 N.W.2d at 70–71.

There is no integrity in allowing a defendant to waive appeal rights when he has been convicted and sentenced after a trial. The waiver of the right to appeal based on an agreement with the state after the defendant has been convicted and sentenced after a trial is of a fundamentally different nature than waiver of a defendant's rights before trial. Given that difference and the coercive nature of agreements requiring a defendant to waive the right to appeal after being convicted at trial in order to receive a reduced sentence, we also conclude that retention of the right to appeal after a conviction is necessary both for the protection of the defendant's rights and maintaining the fairness of the judicial process and cannot be waived. The broader interests we preserve in our holding today are to ensure uniformity, rationality, and fairness in criminal trials. Allowing a

defendant to waive his right to appeal creates a system that discourages the development of the law, permits the results of unfair trials to be preserved, and may encourage prosecutors and courts to hide their errors. Accordingly, we hold that Spann's waiver of his appeal rights under the stipulation agreement is invalid and unenforceable. Spann's right to appeal is reinstated.

Reversed and remanded.

ANDERSON, G. BARRY, J., took no part in the consideration or decision of this case.

ANDERSON, RUSSELL A., Justice (dissenting).

I respectfully dissent. In my view, with certain exceptions, a waiver of appellate rights following the perfection of an appeal from a judgment of conviction, review of the transcript and records by appellate counsel and the filing of an appellate brief is valid so long as procedural protections are in place to ensure that the waiver is knowing, intelligent, and voluntary. In this case, those procedural protections were absent. Consequently, I would affirm the determination that post-trial, post-sentence appeal rights may be waived, but I would remand the matter to the district court for a more comprehensive inquiry as to the validity of Spann's waiver of those rights.

In the context of plea bargaining, criminal defendants may waive fundamental constitutional rights, as long as they do so voluntarily and understandingly, with knowledge of the general nature and consequences of the waiver. *See Adams v. United States,* 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942) (discussing waiver of right to jury trial); *Johnson v. Zerbst,* 304 U.S. 458, 464–67, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (discussing waiver of right to counsel). For four decades, plea

bargaining has been the predominate method of obtaining criminal convictions in the United States. Corinna Barrett Lain, *Accuracy Where it Matters: Brady v. Maryland in the Plea Bargaining Context,* 80 Wash. U. L.Q. 1 (2001) (stating that the plea bargaining rate in criminal cases has been around 90% since the 1960s). While most rights may be waived, there are some rights that are not waivable. *See, e.g., United States v. Mezzanatto,* 513 U.S. 196, 204, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995) (suggesting that while most protections are presumptively waivable, there may be some, such as the right to conflict-free counsel, that cannot be waived); *United States v. Rosa–Ortiz,* 348 F.3d 33, 36 (1st Cir.2003) (holding that guilty plea could not serve as waiver of claim on appeal that defendant had been imprisoned for conduct that Congress did not proscribe in the crime charged).

In that a defendant may waive constitutional rights as part of a plea agreement, it follows that a defendant may also waive statutory rights, including the right to appeal. Every circuit that has considered the issue has reached this conclusion. *United States v. Andis,* 333 F.3d 886, 889 (8th Cir.2003) ("Given that the Supreme Court has allowed a defendant to waive constitutional rights, we would be hard-pressed to find a reason to prohibit a defendant from waiving a purely statutory right."); *United States v. Khattak,* 273 F.3d 557, 559–63 (3d Cir.2001); *United States v. Teeter,* 257 F.3d 14, 21–27 (1st Cir.2001); *United States v. Hernandez,* 242 F.3d 110, 113–14 (2d Cir.2001); *United States v. Fleming,* 239 F.3d 761, 763–64 (6th Cir.2001); *United States v. Jemison,* 237 F.3d 911, 916–18 (7th Cir.2001); *United States v. Nguyen,* 235 F.3d 1179, 1182–84 (9th Cir.2000); *United States v. Brown,* 232 F.3d 399, 402–06 (4th Cir.2000); *United States v. Rubio,* 231 F.3d 709, 711–12

(10th Cir.2000); *United States v. Howle*, 166 F.3d 1166, 1168–69 (11th Cir.1999); *United States v. Melancon*, 972 F.2d 566, 567 (5th Cir.1992).

Among the policy reasons in support of plea-agreement appeal waivers is the need for finality in the process:

> The chief virtues of plea agreements are speed, economy, and finality. Waivers of appeal in plea agreements preserve the finality of judgments and sentences imposed pursuant to valid pleas of guilty. We also note that plea agreements are of value to the accused in order to gain concessions from the government.

*United States v. Rutan*, 956 F.2d 827, 829 (8th Cir.1992) (internal citations omitted).

The majority asserts that plea-agreement appeal waivers are fundamentally different from post-trial/post-sentence waivers, the latter implicating broader institutional concerns related to the integrity of the conviction. But the institutional concerns related to the integrity of a conviction obtained by plea agreement or by trial are equally important; and courts are required to conduct a Rule 15 inquiry to ensure that a plea is "accurate, voluntary, and intelligent (i.e., knowingly and understandingly made)." *Perkins v. State*, 559 N.W.2d 678, 688 (Minn.1997); *see* Minn. R.Crim. P. 15.01.

I recognize that there is a trend in the circuits of instituting a greater level of scrutiny of plea-bargain appeal waivers. *See, e.g., Andis*, 333 F.3d at 890–91 (excepting from appeal waivers claims of illegal sentences, breach of the plea agreement and ineffective assistance of counsel); *Teeter*, 257 F.3d at 25, nn. 9 & 10 (stating that appeal waivers would not preclude sentencing claims based on constitutionally impermissible factors or sentences in excess of the maximum penalty allowed by law); *Brown*, 232 F.3d at 405–06 (express-ing concern about an inartfully drafted appeal waiver permitting appeals based on claims of ineffective assistance of counsel and prosecutorial misconduct but precluding appeals from a sentence in excess of the statutory maximum); *United States v. Rosa*, 123 F.3d 94, 101 (2d Cir.1997) (holding that appellate court oversight permits review of appeal waivers on a case-by-case basis).

I also understand that commentators have expressed much concern over plea-bargain appeal waivers. *See, e.g.,* _____, *Plea Bargain Waivers Reconsidered: A Legal Pragmatist's Guide to Loss, Abandonment and Alienation*, 68 Fordham L.Rev.2011, 2085–95 (2000) (proposing a new approach for analyzing plea-bargain waivers and arguing for re-evaluation of appeal waivers); Joseph A. Colquitt, *Ad Hoc Plea Bargaining*, 75 Tul. L.Rev. 695, 749 (2001) (calling for the retention of a process for review of "inappropriate, unethical, or illegal plea bargains"); Robert K. Calhoun, *Waiver of the Right to Appeal*, 23 Hastings Const. L.Q. 127, 211–15 (1995) (exploring public policy issues and arguing that appeal waivers should either be disapproved or given very restricted scope).

These concerns, however, have little application in a post-trial/post-sentence waiver of appellate rights following an appeal and submission of an appellate brief by legal counsel on a defendant's behalf. When a bargain is made for a specific sentence within the presumptive range of a guidelines system, "the policies underlying the right to appeal have less force * * *." Calhoun, *supra* 210. But those rights that go to the very center of the validity of the appeal waiver, including effective assistance of counsel and the requirement that the waiver be voluntary and intelligent, are unwaivable. Because of our holding in *State v. Misquadace*, 644 N.W.2d 65, 71–72

(Minn.2002), a defendant should also not be able to waive claims of sentencing error. Additionally, I would except claims based on prosecutorial misconduct from any waiver.

In the context of a post-trial/post-sentence waiver, the court should conduct an inquiry of the defendant, similar to Minn. R.Crim. P. 15.01, to ensure the validity of the waiver. *See Butala v. State*, 664 N.W.2d 333, 339 (Minn.2003). The inquiry for an appeal waiver agreement should involve similar questions and also include an explanation by the court as to the scope and requirements of the agreement. In that no similar inquiry was conducted in this case and Spann asserted ineffective assistance of counsel in connection with the appeal waiver, I would remand for a comprehensive inquiry by the district court.

HANSON, Justice (dissenting).

I agree with the conclusion of Justice Russell Anderson that, with certain exceptions, post-sentence appeal rights may be waived so long as procedural protections are in place to ensure that the waiver is knowing, intelligent and voluntary. I dissent separately because I would go further. I would conclude that adequate procedural protections were in place and that Spann's postconviction petitions do not allege sufficient facts to justify an evidentiary hearing on his claim that his waiver was the product of ineffective assistance of counsel or that his consecutive sentence was not authorized by law. Accordingly, I would affirm the denial of Spann's postconviction petition without a hearing.

*1. The district court made a sufficient inquiry of Spann to ensure that his appeal waiver was knowing, intelligent and voluntary.*

I agree that it is important for the district court to conduct an inquiry of the defendant, similar in intent to that required by Minn. R.Crim. P. 15.01, before accepting a post-trial, post-sentence appeal waiver. But that inquiry need not include all parts of rule 15.01 because the defendant has had the benefit of a full jury trial and a sentencing hearing and thus does not need to be advised of the rights he has already enjoyed at those stages of the proceeding. The defendant has heard all of the evidence, has had the opportunity to cross-examine witnesses and to testify, has heard the court's instructions on the charge and the state's burden of proof, and has received his sentence. Thus, the inquiry for a post-trial, post-sentence appeal waiver need not include these matters and can focus on a defendant's right to appeal.

Here, the record of the resentencing hearing shows the following: (1) Spann's appeal brief had already been filed and thus he was fully aware of the precise issues he could raise on appeal. (2) Spann had been advised by his counsel's letter of July 24, 2001, about the state's proposal. On July 30, 2001, he signed a letter to his counsel indicating:

> I have decided to accept the state's offer. In exchange for being re-sentenced at two consecutive 86 months sentences totaling 172 months, I will dismiss my appeal and agree to not challenge these convictions in any other post-conviction relief proceedings.

(3) Spann and his counsel then signed a stipulation to remand the case from the court of appeals to the district court. (4) Spann was present at the resentencing hearing where each of the above matters was described. (5) At the hearing, Spann, on the record, acknowledged that he had discussed the appeal issues and the possible outcome of the appeal with his counsel, stated his agreement to waive his rights to appeal, and, on further examination by the

state, said that this is what he wanted to do. Spann does not claim that these procedural protections were insufficient to ensure that his waiver was knowing, intelligent and voluntary. In fact, Spann does not challenge the postconviction court's finding that his waiver was knowing, intelligent and voluntary.

> 2. *If the district court's inquiry was in any respect deficient, Spann's appropriate remedy was to identify that deficiency in his postconviction petition.*

I agree with Justice Russell Anderson that Spann's appeal waiver did not waive his right to later challenge or seek to withdraw his waiver so long as he could show that his waiver was not knowingly, intelligently or voluntarily made. I also agree that Spann's appeal waiver does not preclude his claim that his counsel was ineffective respecting the waiver, so long as he can show that his counsel was ineffective in a way that prevented the waiver from being knowing, intelligent and voluntary. Thus, even if we were to conclude that the procedure followed when Spann's waiver was accepted was insufficient to ensure that his waiver was knowing, intelligent and voluntary, we need not set aside the waiver because Spann's remedy is to seek to withdraw his plea in a postconviction proceeding. *See, e.g., State v. Coe,* 290 Minn. 537, 538, 188 N.W.2d 421, 422 (1971) (stating that if the defendant can provide proof of ineffective assistance of trial counsel, he could obtain relief from his plea in a postconviction proceeding).

In this postconviction setting, Spann had the opportunity to challenge his appeal waiver by alleging facts showing that his waiver was the product of ineffective assistance of counsel or was otherwise not knowing, intelligent or voluntary. Under our postconviction law, Spann would be entitled to a hearing on that challenge only if he alleged sufficient facts which, if proven, would entitle him to relief. *See, e.g., State v. Kelly,* 535 N.W.2d 345, 347 (1995); *Cable v. State,* 169 N.W.2d 391, 394, 284 Minn. 89, 94 (1969). But Spann's petitions contain only argumentative assertions without factual support. *See, e.g., Hale v. State,* 566 N.W.2d 923, 926 (1997).

The pro se petition contains only conclusory statements without any factual support. As to the claim of ineffective assistance of counsel, Spann does not precisely state what actions of counsel he considers to be incompetent, nor provide the expert opinion of any attorney that his counsel's conduct fell below the accepted standard. To obtain a postconviction hearing, Spann was required to "allege facts which would affirmatively prove that his counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Fratzke v. State,* 450 N.W.2d 101, 102 (Minn.1990).

In describing his ineffective assistance of counsel claim, Spann states:

> The State and Counsel Misrepresented the facts to Petitioner about his Constitutional Right to seek any Relief from the Courts if relief is available to him in any way. To State on behalf of the Federal Court's behalf, that Petitioner is waiving all Rights to Appeal the case in this Court, or in any Post Conviction or Federal Court Proceedings, should be deemed impermissible to the highest order.

To the extent that Spann is suggesting that counsel advised him that the waiver would preclude direct appeal, that advice was, in my view, correct. To the extent that Spann is suggesting that counsel advised him that the waiver could also pre-

clude postconviction review or federal habeas corpus, that advice may have been incorrect. But if, contrary to that advice, Spann retained the right to challenge his waiver in postconviction proceedings, Spann was not prejudiced by that advice. Advice by counsel that the consequences of a waiver would be worse than they actually are would not detract from a knowing, intelligent and voluntary waiver, but would actually reinforce it—a defendant who was willing to waive under the mistaken belief that the effect of the waiver was broader cannot legitimately complain if the true effect of the waiver is narrower.

Because Spann had the right to present his claim of ineffective assistance of counsel in this postconviction petition, the procedural protections surrounding his waiver were fully in place. And because Spann's postconviction petition fails to present sufficient evidence to support his claim of ineffective assistance of counsel, the district court did not err in denying his petition without a hearing.

*3. Spann's postconviction petition likewise fails to present a proper challenge to his consecutive sentence.*

I also agree with Justice Russell Anderson that an appeal waiver does not waive the right of a defendant to challenge an illegal sentence. Thus, Spann had the right in this postconviction petition to claim that his consecutive sentence was not authorized by law. But, Spann's petition fails to make or support that claim.

First, Spann did not challenge his consecutive sentence in the briefs filed on his direct appeal. The only sentencing issue raised in those briefs was a challenge to the upward departures. Those departures were eliminated when Spann was resentenced.

Even if Spann's failure to challenge his consecutive sentence on direct appeal did not preclude doing so by a postconviction petition, Spann's petition fails because he did not bring it within 90 days of the sentence, as required by Minn. R.Crim. P. 28.05. The only exception to this 90–day requirement is to correct a sentence this is not authorized by law, in a proceeding pursuant to Minn. R.Crim. P. 27.03. But Spann does not claim that his consecutive sentence is not authorized by law. The Minnesota Sentencing Guidelines specifically make a consecutive sentence permissive under these circumstances. Minn. Sent. Guidelines II.F.

Accordingly, I would conclude that Spann's petition is insufficient to meet the threshold for an evidentiary hearing. I would affirm.